The **CONTINENTAL INSURANCE COMPANIES, Appellant,**

v.

**Martha E. PRUITT, Appellees.**

Supreme Court of Tennessee.

Oct. 4, 1976.

F. Thornton Strang, Strang, Fletcher, Carriger, Walker, Hodge & Smith, Chattanooga, for appellant.

Robert J. Harriss, Brown, Harriss, Hartman & Ruskaup, Rossville, Ga., for appellees.

## OPINION

HENRY, Justice.

This is a workmen's compensation action wherein the ultimate question is the sufficiency of the evidence to sustain the action of the Chancellor in awarding sixty-five

(65%) percent permanent partial disability to the body as a whole in a case wherein the injury was to the upper left extremity.

The insurance carrier insists that the injury was to a scheduled member, i. e., the arm, and, therefore, an award based upon disability to the body as a whole is not authorized by § 50–1007(c) T.C.A. Relying upon *Chapman v. Clement Bros., Inc.*, 222 Tenn. 223, 435 S.W.2d 117 (1968), the carrier would have us equate "upper left extremity" with "arm" and hold that benefits are restricted to the statutory schedule. We reject this insistence.

### I.

Section 50–1007(c) T.C.A., which contains the scheduled injuries, provides for the payment of permanent partial disability as follows:

> For the loss of an *arm,* sixty-six and two-thirds percent (66⅔%) of the average weekly wages during two hundred (200) weeks. (Emphasis supplied).

The statute contains no reference to an "extremity." It is fundamental that in construing statutes words will be given their ordinary and commonly accepted meaning. *Western Pipe Line v. Dickinson,* 203 Tenn. 248, 310 S.W.2d 455 (1958).

While the courts are not necessarily bound by dictionary definitions, we note the definition of the word "arm", in Webster's, New International Dictionary, Second Edition, (unabridged, 1954):

> A human upper limb;—often restricted to the part between the shoulder and the wrist.

Again, in Dorland's, Medical Dictionary, 23rd edition, (W. B. Saunders Company, 1957):

> The upper extremity *from* the shoulder to the hand. (Emphasis supplied).

We hold that these are the commonly accepted meanings of the word "arm" and

that if the injury extends upward beyond the arm and into the shoulder area to a significant extent it is not a scheduled injury and compensation is governed by so much of § 50–1007(c) T.C.A., as reads as follows:

All other cases of permanent partial disability not above enumerated shall be apportioned to the body as a whole . . . .

We examine the testimony in the light of these controlling considerations.

## II.

■ The testimony of the claimant, a fifty-six year old woman with an eighth grade education, and her lay witnesses fully sustains her insistence that her basic injury was primarily to the shoulder.

It was stipulated that Dr. Earl Campbell, Jr., an orthopedic surgeon, had stated that in his opinion she had a fifty percent permanent partial impairment *to the left upper extremity.* Standing alone this gives no insight into the specifics of the injury.

Dr. Augustus H. Frye, Jr., also an orthopedic surgeon, testified by deposition, and his testimony is more revealing.

His first pertinent observation is that claimant "sustained an injury to her left *shoulder.*" Her presenting complaint was of "pain in the neck, her *shoulder* and her left arm down to the elbow."

He says she had a definite restriction of motion in the left *shoulder* and was "tender to pressure over the lateral surface of the neck and over the trapezius muscle[1] on the left side."

She had a partial removal of the humeral head and an almost total removal of the acromion[2] process. She had a rotator cuff tear, which he described as being a disruption of the rotator cuff, which is "the end product of three muscles in the *shoulder* [which all come together] and this is inserted into the head of the humerus" (the bone extending from the shoulder to the elbow). Part of the shoulder blade had been removed. He estimated that she only had about fifty percent of the normal shoulder joint strength. She did not have a "serviceable" shoulder, it being "unstable" and "weak".

He testified positively, "I think basically all her problem is at the *shoulder* itself." He gave her a fifty percent permanent partial disability of her left upper extremity and twenty-five percent to the body as a whole.

Reading the Doctor's testimony in full context it is beyond doubt that the phrase "left upper extremity" encompassed more than the left upper arm. The following question and answer, on redirect examination are pertinent:

Q. By "left upper extremity", Doctor, you are not talking about just her arm, you are talking about her shoulder as well.

A. I am talking about her hand, her elbow, her wrist, her forearm, her elbow and *shoulder.* I am talking about the entire extremity. (Emphasis supplied).

There is no testimony on any injury peculiar or restricted to the arm. It all relates either to the shoulder or to the joint between the arm and shoulder.

The following chart, when read in conjunction with the proof, as herein digested, will serve to illustrate that the basic injury here involved was to the shoulder.

---

1. The function of the trapezius muscle is to rotate the acapula (shoulder blade) to raise the shoulder in abduction (the withdrawal of a part from the axis of the body) of the arm. See Dorland's Medical Dictionary, page 879 (23rd edition 1957). This difficulty in abduction was a major complaint voiced by claimant in her testimony.

2. The acromion is the outward extension of the spine of the scapula, forming the point of the shoulder. Dorland's Medical Dictionary, page 29.

CORACO-ACROMIAL LIG.

TRAPEZOID LIG.

ACROMION

CONOID LIG.

SYNOVIAL CAPSULE

CLAVICLE

TRANSVERSE HUMERAL LIG.

SUBSCAPULARIS BURSA

HUMERUS

SYNOVIAL SHEATH OF BICEPS

SCAPULA

## III.

A careful reading of the record commands the conclusion that claimant's injuries must be related to the body as a whole *vis a vis* a scheduled member.

In *Chapman v. Clement Bros., Inc., supra,* the claimant complained of pain about the shoulder joint but there was no dislocation of the joint. He sustained a fracture of the upper portion of the humerus, the upper arm bone and possibly a tear of the rotator cuff. He had marked pain and spasm about the right shoulder and the shoulder joint was injured.

The testifying physician in *Chapman* defined an "upper extremity" as follows:

The upper extremity is a unit of the whole man. It may be divided into four sections; the hand, the wrist, the elbow and the *shoulder.* (Emphasis supplied). 222 Tenn. at 226, 435 S.W.2d at 118.

While we have no disposition to question this definition, the fact remains that an "upper extremity" is not a scheduled member. This extremity necessarily includes the fingers, the thumb, the hand, and the arm—all scheduled members, irrespective of their being included in the term "extremity" or "upper extremity."

Second, the shoulder is not a scheduled member.

Third, in *Chapman,* regardless of the imprecise terminology, the injury was to the arm, a scheduled member.

Perhaps some of the language used in *Chapman* was overbroad. It is not controlling here and its holding must be confined to its own factual situation.

The distinguished Chancellor showed commendable insight in the resolution of

**598**

this issue and, in all respects, his judgment is

Affirmed.

All concur.