518 So.2d 1082 (1987)
Danny DEEGAN
v.
RAYMOND INTERNATIONAL BUILDERS, INC. and Liberty Mutual Insurance Company.
No. 87-CA-150.
Court of Appeal of Louisiana, Fifth Circuit.
November 9, 1987.
Rehearing Denied February 17, 1988.
*1083 Edward J. Cloos, III, New Orleans, for plaintiff-appellant.
Kenneth B. Krobert, Metairie, for defendants-appellees.
Before GAUDIN, WICKER and GOTHARD, JJ.
GAUDIN, Judge.
Appellant-plaintiff is Danny Deegan, whose workmen's compensation case under LSA-R.S. 23:1221(4)(q) was dismissed in the 24th Judicial District Court. We affirm.
On appeal, Deegan specifies these district court errors:
(1) the trial judge erred in enforcing statutory provisions against him because he satisfied disability requirements,
(2) the trial judge should have declared this statute unconstitutional, and
(3) the trial judge should have allowed additional discovery.
Deegan sustained injuries to a thumb. Following corrective surgery, he returned to work as a construction worker but he was left with a residual loss of use. One orthopedic surgeon placed the percentage of loss of use of the thumb at 45 per cent while another physician, also an orthopedic surgeon, said 50 per cent.
Paragraph (q) of R.S. 23:1221 reads as follows:
"No benefits shall be awarded or payable in this Paragraph unless anatomical loss of use or amputation, as provided in Subparagraphs (a) through (1) of this Paragraph or loss of physical function as provided in Subparagraph (p) of this Paragraph is greater than fifty percent *1084 as established in the American Medical Association Guides to the Evaluation of Permanent Impairment, copyright 1977, by the American Medical Association."
Scheduled disability provisions are intended to supplement wage loss claims and provide a remedy in the nature of tort. See Washington v. Independent Ice and Cold Storage Co., Inc., 211 La. 690, 30 So.2d 758 (1947). In 1983, the legislature modified the scheduled recovery provisions by requiring a 50 per cent or more loss of use.
Dr. Robert Ruel, one of the orthopedic surgeons who examined Deegan, admitted that the difference between 50 and 55 per cent is subtle but added:
"If somebody tagged a 55 per cent on him, I would have no objection to that personally, however, I would not give that."
The other orthopedist, Dr. Harold Stokes, stated that Deegan's damaged thumb was "serviceable" and that there was a 45 per cent permanent partial disability of the thumb.
After receiving all of the medical evidence, particularly that pertaining to the precise percentage of disability, the district judge was faced with a close call. He may well have found that Deegan qualified under the statute in question as workmen's compensation claimants sometimes benefit from a sympathetic judicial ear in ways other plaintiffs do not. On the other hand, neither doctor said the disability exceeded 50 per cent as required by the statute. Either way, we cannot say that a factual determination in the wake of this medical testimony was manifestly erroneous.
If not clearly wrong, a trial judge's findings of fact are not changed on appeal unless there is an unreasonable basis for the findings. See Arceneaux v. Domingue, 365 So.2d 1330 (La.1978) and many subsequent cases with similar holdings. Here, the medical evidence is supportive of the finding that loss of physical function was not more than 50 per cent.
On the constitutional issue, Deegan asserts that the 50 per cent or more requirement is not uniformly applied. Section (p) of R.S. 23:1221 excludes from the 50 per cent or more requirement those employees who are "... seriously and permanently disfigured or where the usefulness of the physical function of the respiratory system, gastrointestinal system or genito-urinary system ... is seriously and permanently impaired ..." In such cases, when the disability is not susceptible to a percentage determination, reasonable compensation shall be awarded.
This distinction, Deegan argues, deprives him of equal protection of the laws and is in violation of the federal and state constitutions, particularly Article 1, Section 3 of the Louisiana Constitution of 1974, which states:
"No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations ..." (Underlining provided.)
Citing constitutional provisions and Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094 (La.1985), Deegan contends that he has been illegally placed in a category on the basis of a physical condition inasmuch as there was neither a plausible basis nor a legitimate state interest for the classification.
In Sibley, the Supreme Court of Louisiana held that the $500,000.00 judgment limitation of the Medical Malpractice Act (LSA-R.S. 40:1299.39, et seq., as amended) applied to physicians and those directly involved with health services but not to members of the LSU Board of Supervisors. Also at issue and discussed at length was the constitutional contention that the $500,000.00 cap violated the injured petitioner's equal protection rights.
The Sibley plaintiff, a 19-year-old woman who suffered permanent and devastating mental and physical injuries while a *1085 psychiatric patient at the LSU Medical Center in Shreveport, argued that she was entitled to an award in excess of the maximum and that the statute unconstitutionally discriminates, because of a physical condition, against those with $500,000.00 and above claims, excluding actual medical expenses, for which there is no maximum.
A sharply divided Court did not decide the equal protection question but remanded to the First Circuit Court of Appeal with these instructions:
"... the case is remanded to the court of appeal with instructions to award plaintiff medical expenses in accord with Act No. 239 of 1985 and, consistent with this opinion, to determine from the record (1) the damages Sibley suffered other than medical expenses, and (2) whether the LSU Board is directly and independently liable for Sibley's injury and disability, and to render judgment accordingly. In the event the court of appeal determines that the LSU Board is not directly or independently liable, and that Sibley's damages other than those for medical expenses exceed 500,000 Dollars, the appeals court is instructed to remand the case to the trial court and to order that court to decide whether the statute is constitutional after affording both parties an opportunity to adduce evidence and present arguments."[1]
Three dissents objected to the requirement that the state justify its legislation in court, one dissenting justice calling it "... an unwarranted invasion of matters best left to resolutions in the halls of the legislature."
R.S. 23:1221(4)(q) was meant to bestow, in certain instances, extra payments above and beyond normal compensation benefits. There is nothing in the Deegan record to suggest that the federal 14th Amendment's equal protection clause or the broader equal protection intent of the state constitution was violated by the 50 per cent loss of use requirement.
It is the legislature's function to draw certain lines, in the workmen's compensation act and elsewhere. Presumably such statutory distinctions serve legitimate public interest. R.S. 23:1221 obviously attempts to balance the interests of the injured worker with those of the employer, with the theoretical concurrent benefit to the public due to the reduced cost of doing business. See Armstrong v. Land and Marine Applicators, Inc., 463 So.2d 1331 (La.App. 5th Cir.1984).
Sibley notwithstanding, we find no constitutional problems with R.S. 23:1221(4)(q), certainly none of sufficient magnitude to remand for additional testimony regarding equal protection or classification.
Finally, we find no merit in appellant's request that this case be remanded for further discovery. The trial judge refused to order Liberty Mutual Insurance Company to produce information pertaining to claims paid before and since 1983, when the 50 per cent loss of use category was established.
The district court judgment denying R.S. 23:1221(4)(q) benefits is affirmed, with Deegan to bear costs of this appeal.
AFFIRMED.
NOTES
[1] Although officially not a part of this record, we were advised that a compromise agreement was reached and that the district court took no further action in Sibley. The First Circuit Sibley is at 446 So.2d 760.