**James D. MORTIMER, Appellee,**

v.

**FRUEHAUF CORPORATION and CNA Insurance Companies, Appellants.**

No. 92–1143.

Supreme Court of Iowa.

June 16, 1993.

Elliott R. McDonald, Jr., and Patricia Rhodes Cepican of McDonald, Stonebraker & Cepican, P.C., Davenport, for appellants.

Paul J. McAndrew, Jr., of Meardon, Sueppel, Downer & Hayes, Iowa City, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, SCHULTZ, and LAVORATO, JJ.

LAVORATO, Justice.

Is a psychological condition caused or aggravated by a scheduled injury compensable as an unscheduled injury? The Iowa industrial commissioner thought not and denied benefits. On judicial review, the district court disagreed and reversed the commissioner's decision. We agree with the district court and affirm.

## I. *Background Facts and Proceedings.*

James D. Mortimer was employed by Fruehauf Corporation. He was injured during the course of his employment when a cable snapped, causing an I-beam to strike his left foot. In the accident Mortimer sustained a crush injury resulting in the amputation of the first four toes of his left foot.

In proceedings before the Iowa industrial commissioner, Mortimer received workers' compensation benefits. These benefits were for a scheduled member injury under what is now Iowa Code section 85.34(2)(*o*) (1993).

Later, Mortimer filed a petition for review-reopening. Following a hearing a deputy commissioner concluded that Mortimer had a permanent partial impairment of twenty-seven percent to his left lower extremity (left foot and leg). The deputy also concluded that the injury aggravated a "preexisting depressive condition more than slightly, but the depression is a temporary aggravation under the status of the present record."

Mortimer filed a second review-reopening petition seeking additional benefits for a change in condition. *See* Iowa Code § 86.-14. In the petition Mortimer alleged that the accident and injury had caused him "serious and continued depression" rendering him unable to work.

In his decision on this last review-reopening petition, a deputy commissioner found that

> [s]ince the [first review-reopening decision], claimant has undergone a change in condition in that his psychological problems causally related to the work injury have become permanent. However, claimant's condition as to his injured foot has not been shown to have changed.

The deputy then concluded that (1) Mortimer's psychological condition was exacerbated by the scheduled member injury, (2) this exacerbation is contemplated by the schedule and therefore is not compensable industrially, and (3) because Mortimer failed to show a change in the condition of his scheduled member injury, he was not entitled to additional permanent partial disability benefits. The deputy limited Mortimer's award to temporary total disability benefits for the time he could not work because of the scheduled injury.

Mortimer appealed the deputy's decision to the Iowa industrial commissioner who affirmed the deputy's decision.

After exhausting his administrative remedies, Mortimer petitioned the district court for judicial review. The court reversed the commissioner's decision and remanded the case for a determination of Mortimer's industrial disability because of his psychological condition.

It is from this ruling that Fruehauf and its insurer, CNA Insurance Companies, appeal to us.

## II. *Scope of Review.*

■■■ Decisions of the industrial commissioner are reviewed by the district court pursuant to Iowa Code chapter 17A. *See* Iowa Code § 86.26. The district court's scope of review under section 17A.19 and our review on appeal under section 17A.20 is at law and not de novo. In our review we apply the standards of section 17A.19(8) to the agency's actions to determine whether our legal conclusions are the same as those reached by the district court. *Norland v. Iowa Dep't of Job Serv.*, 412 N.W.2d 904, 908 (Iowa 1987). If our conclusions are the same, we affirm; otherwise, we reverse. *Id.* Because the question presented concerns an interpretation of Iowa's workers' compensation act, the question is one of law.

The general principles that guide our interpretation of the workers' compensation act are stated in *Beier Glass Co. v. Brundige*, 329 N.W.2d 280, 283 (Iowa 1983) (citations omitted):

> Our ultimate goal is to determine and effectuate the intent of the legislature. We look to the object to be accomplished, the mischief to be remedied, or the purpose to be served, and place on the statute a reasonable or liberal construction which will best effect, rather than defeat, the legislature's purpose. We avoid strained, impractical or absurd results in favor of a sensible, logical construction. We consider all parts of the statute together, without attributing undue importance to any single or isolated portion. The spirit of the statute must be considered along with its words, and the manifest intent of the legislature will prevail over the literal import of the words used.

Although final interpretation and construction of the statute is for this court, we give deference to an interpretation by the responsible administrative agency. Our policy is to liberally construe workers' compensation statutes in favor of the worker.

## III. *Compensability of Psychological Condition Resulting from Scheduled Injury.*

Mortimer concedes that he had a preexisting psychological condition. But Mortimer contends his condition was greatly aggravated by his foot injury. So he believes that his psychological condition should be compensated as an industrial disability.

Fruehauf and CNA vigorously contend that Mortimer is limited to benefits under the schedule. Because he has been paid all that he is entitled to under the schedule, Fruehauf and CNA insist that Mortimer is entitled to nothing more.

■■■ A. *Compensability under Iowa's workers' compensation act.* Before proceeding to the question at hand, we think it would be helpful to review the compensation scheme under Iowa Code chapter 85, Iowa's workers' compensation act. As a creature of statute, our workers' compensation law—subject to constitutional limitations—may provide such provisions and limitations as the legislature deems necessary. But, as we noted earlier, this law is for the benefit of the working person and should be, within reason, liberally construed.

■■ Functional disability is arrived at by determining the impairment of the employee's body function. This disability is limited to the loss of the physiological capacity of the body or body part. *Simbro v. Delong's Sportswear*, 332 N.W.2d 886, 887 (Iowa 1983).

■■ In contrast, industrial disability is arrived at by determining the loss to the employee's earning capacity of the body or body part. In this determination impairment of the body function—that is, functional disability—is just one factor. Other

factors include the employee's age, education, qualifications, experience, and the inability of the employee to engage in employment for which the employee is fitted. All of these factors are used to measure the extent to which the injury impairs the employee's ability to earn wages. *Id.*

Chapter 85 divides permanent partial disability into either a scheduled or unscheduled loss. *See* Iowa Code § 85.34(2). Paragraphs (a) through (t) of section 85.-34(2) are reserved for scheduled injuries, like a loss of a foot. Specific weekly benefits are listed. For example, paragraph (n) provides for weekly compensation during one hundred fifty weeks for loss of a foot. Unscheduled injuries are covered in paragraph (u). Benefits for these are based on the injury to the body as a whole. *See* Iowa Code § 85.34(2)(u) ("compensation shall be paid during the number of weeks in relation to five hundred weeks as the disability bears to the body of the injured employee as a whole").

■ We have approved the use of functional and industrial methods of determination within appropriate classifications of section 85.34(2). For example, a specific scheduled disability is determined by the functional method; an unscheduled disability is determined by the industrial method. *Simbro*, 332 N.W.2d at 887; *see also Graves v. Eagle Iron Works*, 331 N.W.2d 116, 117–19 (Iowa 1983) (held that an employee with a permanent partial disability to a leg had a scheduled disability that required the determination of functional impairment of his leg without regard to the industrial disability factors). So a person may suffer a permanent total disability as a result of some scheduled injury. This may happen because of age, lack of training, or other condition peculiar to the person. Yet such an injury is *arbitrarily* compensable according to the schedule.

An unscheduled injury can result in permanent total disability. In these circumstances, the "weekly compensation is payable during the period of the employee's disability." *See* Iowa Code § 85.34(3).

From this discussion it is easy to see that the maximum amount of compensation payable in this case differs radically depending upon which party is correct. The stakes are indeed high. If Mortimer is correct, the psychological condition would be considered an unscheduled injury. The commissioner would be obliged to use the industrial method to determine any disability and the corresponding period of compensation. Although we offer no view on what that disability might be, the commissioner could conceivably find that Mortimer has suffered a permanent total disability. In that event weekly compensation would be payable for as long as Mortimer is disabled.

In contrast, if the employer and insurer are correct, Mortimer's scheduled injury includes the psychological condition for which he has already been paid. In fact, the commissioner has determined that Mortimer owes the employer about twenty-nine weeks of permanent partial disability benefits that were paid in excess of what was required by law.

■ B. *The merits.* That brings us to the question in this case: Under chapter 85, are workers' compensation benefits available for a psychological condition caused or aggravated by a scheduled injury?

It is uncontroverted that Mortimer's preexisting psychological condition was aggravated by the scheduled injury. All the medical experts agreed on this point. And the commissioner so found.

Iowa Code section 85.3(1) says this:

Every employer, not specifically excepted by the provisions of this chapter, shall provide, secure, and pay compensation according to the provisions of this chapter *for any and all personal injuries* sustained by an employee arising out of and in the course of the employment, and in such cases, the employer shall be relieved from other liability for recovery of damages or other compensation for such personal injury.

(Emphasis added.) The injury contemplated in this provision

means an injury to the body, the impairment of health, or a disease, not excluded

by the act, which comes about, not through the natural building up and tearing down of the human body, but because of a traumatic or other hurt or damage to the health or body of an employee.

*Almquist v. Shenandoah Nurseries*, 218 Iowa 724, 732, 254 N.W. 35, 39 (1934).

In *Deaver v. Armstrong Rubber Co.*, 170 N.W.2d 455 (Iowa 1969), this court upheld a workers' compensation award for a manic depressive psychosis caused by an unscheduled injury to the claimant's head. The award was for permanent partial disability to the body as a whole to the extent of twenty-five percent. Faced with having to determine the meaning of "injury" for workers' compensation purposes in this context, this court turned to a sister state's definition of the term:

[T]he term "injury" as used in the [Indiana] Workmen's Compensation Act ... is broader than mere reference to some objective physical break or wound to the body, but includes also the consequences therefrom, *including mental ailments or nervous conditions.*

*Deaver*, 170 N.W.2d at 466 (citing *Sollitt Constr. Co. v. Walker*, 127 Ind.App. 213, 221, 135 N.E.2d 623, 627 (1956)) (emphasis added).

For several reasons, we think a psychological condition caused or aggravated by a scheduled injury is compensable as an unscheduled injury.

First, the language "for any and all personal injuries" in section 85.3(1) is all inclusive. There is no exclusion for a psychological condition caused or aggravated by a scheduled injury. And this court has interpreted "personal injuries" for purposes of workers' compensation coverage to include mental conditions.

Second, this court has consistently held that psychological conditions resulting from work-related physical trauma are compensable. *Deaver*, 170 N.W.2d at 466 (head injury caused manic depressive psychosis); *Coghlan v. Quinn Wire & Iron Works*, 164 N.W.2d 848, 853 (Iowa 1969) (back injury aggravated, accelerated, or precipitated a manic depressive psychotic condition); *Gosek v. Garmer & Stiles Co.*, 158 N.W.2d 731, 737 (Iowa 1968) (back injury triggered neurosis). The rationale for the rule is that

[w]hen there has been a compensable accident, and claimant's injury related disability is increased or prolonged by a trauma connected neurosis or hysterical paralysis, all disability, including effects of any such nervous disorder, is compensable.

*Gosek*, 158 N.W.2d at 733. *See also* 1B Arthur Larson, *The Law of Workmen's Compensation* § 42.22(a), at 7-832 (1993) ("[W]hen there has been a physical accident or trauma, and claimant's disability is increased or prolonged by traumatic neurosis, conversion hysteria, or hysterical paralysis, it is now uniformly held that the full disability including the effects of the neurosis is compensable."); 82 Am.Jur.2d *Workers' Compensation* § 317, at 341-42 (1992).

Last, this court has also consistently held that when there is injury to some scheduled member and also to parts of the body not included in the schedule, the resulting disability is compensated on the basis of an unscheduled injury. *See, e.g., Lauhoff Grain Co. v. McIntosh*, 395 N.W.2d 834, 837-39 (Iowa 1986) (original injury was a fracture of the femur below the hip joint, a scheduled injury; spill over effects to hip joint, a nonscheduled part of the body); *Barton v. Nevada Poultry Co.*, 253 Iowa 285, 291-93, 110 N.W.2d 660, 664 (1961) (original injury was to right foot, a scheduled injury; spill over effects to entire nervous system, a nonscheduled part of the body); *Dailey v. Pooley Lumber Co.*, 233 Iowa 758, 763-65, 10 N.W.2d 569, 572-73 (1943) (original injury was fracture of femur, a scheduled injury; spill over effects to pelvis and spine, nonscheduled parts of the body).

The rationale for this last holding comes from *Dailey* and rests on the following statutory interpretation, which we paraphrase in terms of today's statute. Unscheduled injuries are covered in paragraph (u) of section 85.34(2). It says:

In all cases of permanent partial disability other than [scheduled injuries], the compensation shall be paid during the number of weeks in relation to five hundred weeks as the disability bears to the body of the injured employee as a whole.

Iowa Code § 85.34(2)(u) (1993). This provision sets no limitation as to the physical location of the injury causing the disability.

The only limitation regarding location of the injury concerns permanent partial disabilities arising from scheduled injuries. And although such injuries may cause permanent total disability because of the claimant's lack of education or experience or physical strength or ability, the injuries are *arbitrarily* compensable according to the schedule. This is so because the legislature in its wisdom has seen fit to give the commission no discretion with regard to scheduled injuries. The legislature did this in order to make certain the amount of compensation in cases of specific injuries and to avoid controversies. But where there is injury to a scheduled member *and also to parts of the body not included in this schedule,* there is no logical reason for such arbitrariness.

We think this same rationale should apply whether the spill over effects for the scheduled injury are physical or mental. We see no logical reason for any difference in treatment. Whether the spill over effects are physical or mental, the result is the same: disability.

Other courts agree. *See, e.g., Ronquillo v. Industrial Comm'n,* 5 Ariz.App. 233, 235, 425 P.2d 135, 137–38 (1967) (injuries to both ankles and fracture of left leg aggravated worker's preexisting hypertension; held award is converted from scheduled to unscheduled award); *Berger v. Hahner, Foreman & Cale, Inc.,* 211 Kan. 541, 547–50, 506 P.2d 1175, 1180–82 (1973) (worker suffered scheduled injury to eye and traumatic neurosis because of the injury; held that traumatic neurosis was compensable as unscheduled injury); *Kraft v. Paul Reed Constr. & Supply, Inc.,* 239 Neb. 257, 260, 475 N.W.2d 513, 516 (1991) (held that injury to claimant's left leg, resulting in traumatic neurosis, was compensable as disability of body as a whole, and not just as partial disability of leg as scheduled member); *Jensen v. United Perlite Corp.,* 76 N.M. 384, 386–90, 415 P.2d 356, 357–59 (1966) (worker suffered fracture of left arm—a scheduled injury—and severe traumatic neurosis; held that the traumatic neurosis was not like pain and suffering inherent in the fracture but was a separate and distinct injury and therefore compensable as an unscheduled injury), *overruled on other grounds, American Tank & Steel Corp.* 90 N.M. 513, 565 P.2d 1030 (1977); *Hill v. Hanes Corp.,* 319 N.C. 167, 174–77, 353 S.E.2d 392, 397–98 (1987) (held that award for scheduled leg injury did not preclude additional award for psychiatric disorder). On this point one noted treatise writer says this:

When the physical injury precipitating the neurosis is itself a scheduled injury, no special problems arise, since the case falls easily within the familiar rule that the schedule is not exclusive when the effects overflow beyond the scheduled member.

1B Arthur Larson, *The Law of Workmen's Compensation* § 42.22(e), at 7–863 (1993); *accord* 82 Am.Jur.2d *Workers' Compensation* § 339, at 365 (1992).

IV. *Disposition.*

We hold that a psychological condition caused or aggravated by a scheduled injury is to be compensated as an unscheduled injury. This holding is faithful to our policy of liberally construing Iowa's workers' compensation law in favor of the worker. We therefore affirm the district court's decision that reached the same conclusion.

**AFFIRMED.**