Larry C. GILLELAND, Appellant,

v.

**ARMSTRONG RUBBER CO.,**
and Travelers Insurance
Co., Appellees.

No. 93–965.

Supreme Court of Iowa.

Nov. 23, 1994.

Philip F. Miller, Des Moines, for appellant.

Terry L. Monson and Steven M. Nadel of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, for appellees.

PER CURIAM.

Larry Gilleland appeals from a district court order affirming the industrial commissioner's denial of his claim for additional workers' compensation benefits. He contends the scheduled injury provisions of Iowa Code section 85.34(2) (1993) violate the equal protection guarantees of the Iowa and Unit-

ed States Constitutions. He also contends the industrial commissioner erred in giving inordinate weight to the opinion of his treating physician and in failing to reopen the record for additional evidence. We affirm.

I. *Background.*

Gilleland sustained a work-related broken leg in 1987. On April 6, 1989, Gilleland filed a petition with the industrial commissioner for additional benefits, alleging the 1987 injury had also caused injury to his body as a whole. He also challenged the constitutionality of the scheduled injury provisions of Iowa's workers' compensation scheme.

After a hearing, the deputy commissioner issued a proposed opinion, concluding that Gilleland's alleged injuries were not caused by the 1987 injury. The deputy gave more weight to the treating physician's opinion that Gilleland's back and neck problems were not caused by the 1987 injury than to the contrary opinion of the doctor who saw Gilleland once and based his opinion on Gilleland's subjective complaints. The deputy commissioner found it did not have jurisdiction to address Gilleland's constitutional challenge.

Gilleland appealed to the industrial commissioner. Some three months after his appeal was filed, Gilleland submitted a pro se brief contending, among other things, that the matter should be remanded due to his treating physician's recent, posttrial change of opinion. The treating physician's new opinion indicated Gilleland's back injury was a work-related aggravation of a preexisting condition. The industrial commissioner concluded it could not consider evidence presented by means of an appeal brief and refused to consider the treating physician's new opinion. It adopted the deputy's proposed opinion and affirmed the denial of benefits. On judicial review, the district court affirmed finding section 85.34(2) constitutional. Gilleland now appeals.

II. *The Constitutionality of the Scheduled Injury Provisions of Iowa's Workers' Compensation Scheme.*

Gilleland contends the scheduled injury provisions of Iowa Code section 85.34(2) vio-

late the equal protection guarantees of the United States and Iowa Constitutions. The equal protection guarantees of the United States Constitution are provided in the Fourteenth Amendment, section one, as follows:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State . . . deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV § 1. The Iowa Constitution puts substantially the same limitations on state legislation, providing:

All laws of a general nature shall have a uniform operation; the general assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens.

Iowa Const. art. I § 6.

As a threshold issue, Gilleland contends section 85.34(2) is subject to strict scrutiny analysis as opposed to the less stringent rational basis analysis. *See Suckow v. NEOWA FS, Inc.,* 445 N.W.2d 776, 778 (Iowa 1989). In order for a statute to be subject to strict scrutiny it must involve a suspect classification or a fundamental right. *Id.*

Gilleland initially claims section 85.34(2) should be subject to strict scrutiny because the entire workers' compensation scheme impinges upon the fundamental right to "sue for damages." This issue has been decided adversely to Gilleland in *Suckow.*

*Suckow* involved an equal protection challenge to Iowa Code section 85.20 (1985), granting an employer-tortfeasor immunity and a coemployee limited immunity from suit. *Suckow,* 445 N.W.2d at 777–78. "Suckow contended the distinction between the liability of an employer and co-employee in section 85.20 infringed upon a fundamental right—his access to the courts." *Id.* at 778. We determined "Suckow incorrectly assumed that access to the courts is itself a fundamen-

tal right" and refused to apply the strict scrutiny analysis. *Id.* We find no difference between Suckow's alleged right to have access to the courts and Gilleland's alleged right to sue for damages. The right to sue for damages is not itself a fundamental right.

■ Gilleland argues a second alternative for application of strict scrutiny analysis. He contends an employee who does not suffer a scheduled injury is able to obtain recovery for loss of earning capacity while an employee who suffers a scheduled injury is not. He claims this distinction treats the two classes of injured employees differently to the detriment of those suffering scheduled injuries.

■ Gilleland fails to cite any authority indicating the United States Supreme Court has found this distinction involves a suspect class or a fundamental right. Without such authority, we are not bound to apply strict scrutiny analysis. *See Stracke v. City of Council Bluffs,* 341 N.W.2d 731, 733 (Iowa 1983) (strict scrutiny analysis only required in few cases involving suspect classes and fundamental rights as defined by Supreme Court). Thus, we need only apply the rational basis analysis to Gilleland's alleged constitutional violation. *Cf., Stephenson v. Sugar Creek Packing,* 250 Kan. 768, 830 P.2d 41, 48 (1992).

■ In the application of the rational basis analysis, Gilleland must first demonstrate beyond a reasonable doubt that the scheduled injury classifications of section 85.34(2) deny him equal protection. *See Suckow,* 445 N.W.2d at 779. He must indicate with particularity how this denial occurs. *Id.* To meet this heavy burden, he must negate every reasonable basis which may support this classification. *Id.*

■ Gilleland's arguments in relation to the rational basis analysis again focus on the ability of employees who suffer nonscheduled injuries to obtain compensation for loss of earning capacity while those suffering scheduled injuries cannot. He claims there is no rational basis for this distinction.

■ Gilleland is correct that a disparity exists between the compensation for scheduled and nonscheduled injuries. Non-

scheduled permanent partial disabilities are compensated by the industrial disability method which takes into account the loss of earning capacity. *Mortimer v. Fruehauf Corp.,* 502 N.W.2d 12, 14–15 (Iowa 1993). Scheduled permanent partial disabilities, on the other hand, are "arbitrarily" compensable according to the classifications of section 85.34(2) without regard to loss of earning capacity. *Id.* Determining disability in this fashion—looking only to the impairment of the employee's body function—is referred to as the functional disability method. *Id.* By using the functional disability method of section 85.34(2),

> we are not concerned with the question of the extent of disability. The compensation in that event is definitely fixed according to the loss of use of the particular member. *The very purpose of the schedule is to make certain the amount of compensation in the case of specific injuries and to avoid controversies....*

*Dailey v. Pooley Lumber Co.,* 233 Iowa 758, 760, 10 N.W.2d 569, 571 (1943) (emphasis added).

As *Dailey* indicates, a rational basis exists for the application of the scheduled injury provisions of section 85.34(2). They reduce controversies through certainty of compensation. *Accord Mortimer,* 502 N.W.2d at 17; *see also Schell v. Central Eng'g Co.,* 232 Iowa 421, 425, 4 N.W.2d 399, 401 (1942) ("The [scheduled injury] statute was intended to be definite. It draws definite lines. A line is necessarily arbitrary."). Because a rational basis for the scheduled injury provisions exists, we conclude Gilleland's challenge must fail. This result is consistent with other jurisdictions that have considered constitutional challenges to similar scheduled injury provisions. *See Imrich v. Industrial Comm'n,* 13 Ariz.App. 155, 474 P.2d 874, 875 (1970) (scheduled injury provisions not entirely arbitrary or unreasonable); *Koesterer v. Industrial Comm'n,* 45 Ill.2d 383, 259 N.E.2d 49, 50 (1970) (limitation of compensation for scheduled injuries not an arbitrary and unreasonable classification); *Deegan v. Raymond Int'l Builders,* 518 So.2d 1082, 1084 (La.App.1987) (requirement of fifty percent or greater loss of use before recovery of

scheduled disability benefits held constitutional); *Hise Constr. v. Candelaria*, 98 N.M. 759, 760, 652 P.2d 1210, 1211 (1982) (scheduled injury section not unconstitutional as applied).

### III. Whether the Industrial Commissioner Gave Inordinate Weight to the Opinion of the Treating Physician.

■ Gilleland also claims the industrial commissioner, by adopting the deputy's decision, improperly gave the opinion of the treating physician, Dr. Marshall Flapan, greater weight than the opinion of Dr. Jerome Bashara, who saw Gilleland once for the purpose of an independent examination.

■ We do not believe Gilleland can prevail on this issue. On the one hand, Gilleland correctly argues we have rejected the proposition that, as a matter of law, a treating physician's testimony will be given more weight than a physician who examines the patient in anticipation of litigation. *Rockwell Graphic Sys., Inc. v. Prince*, 366 N.W.2d 187, 192 (Iowa 1985). However, the deputy did not rule *as a matter of law* that Dr. Flapan's opinion would be given greater weight. In the portion of its arbitration decision evaluating Dr. Bashara's opinion, the deputy stated "Dr. Bashara never treated claimant and his opinion as to causation is based on claimant's subjective complaints which did not surface until February 1, 1990, two years following his fracture." Thus, it appears the deputy's decision was based, in part, upon the span of time since the injury and the fact Dr. Bashara was unable to base his decision on objective factors. Such considerations are a valid part of determining the weight to be given a treating physician's testimony.

### IV. Whether the Industrial Commissioner Erred in Failing to Reopen the Record.

Gilleland seeks to include in the record a reversal of opinion by Dr. Flapan, indicating the injury to his leg did cause additional injuries to his back and that, therefore, the injuries to his back were work related. Gilleland attempted to introduce the evidence for the first time on his appeal to the industrial commissioner. He did not file a request before the commissioner for the taking of additional evidence as required by rule 343–4.28 of the Iowa Administrative Code. Instead, he included the issue of reopening the record in his pro se brief and attached the new opinion as an exhibit. Citing rule 343–4.28 and the proposition that it is improper to introduce new evidence through an appeal brief, the commissioner refused to consider the new evidence.

■ The industrial commissioner has a "reasonable range of informed discretion" to interpret and administer its administrative rules. *Dameron v. Neumann Bros., Inc.*, 339 N.W.2d 160, 162 (Iowa 1983). We believe the industrial commissioner was within its discretion in not allowing new evidence to be introduced through an appellate brief.

### V. Summary.

Gilleland has failed to prove there is not a rational basis for application of the scheduled injury provisions of Iowa's workers' compensation scheme. We conclude the scheme does not violate the state or federal constitutions. The industrial commissioner did not err in giving less weight to Dr. Bashara's testimony or in refusing to consider Dr. Flapan's revised opinion. The district court's order affirming the industrial commissioner's denial of Gilleland's application for additional workers' compensation benefits is affirmed.

**AFFIRMED.**

All Justices concur except LAVORATO, J., and LARSON, ANDREASEN and TERNUS, JJ., who concur specially.

LAVORATO, Justice, (concurring specially).

I reluctantly agree that the scheduled injury provision is not subject to the constitutional infirmity that Gilleland asserts. Nevertheless, I write separately to express my agreement with a prior concurring opinion that this provision is grossly unfair. *See Graves v. Eagle Iron Works*, 331 N.W.2d 116, 119–20 (Iowa 1983) (McCormick, J., concurring specially).

In *Graves*, the petitioner, a fifty-three year old married man with four children, suffered

a leg injury. The doctor gave him a twenty percent impairment of his left leg that translated into forty-four weeks of benefits. Because of his permanent impairment, the petitioner lost his job, a job he had held for twenty-five years. The petitioner urged this court to apply industrial disability—loss of earning capacity—in determining his benefits rather than functional impairment under the scheduled injury provision in Iowa Code section 85.35(2)(u). This court rejected the petitioner's urging, limiting him to forty-four weeks of benefits even though his work life as he had known it was at an end. Had the court applied the industrial disability formula, the benefits of course would have been substantially greater and eminently more reflective of his true industrial disability.

In a special concurrence, the then Justice McCormick underscored the unfairness of the scheduled injury provision:

> As this case illustrates, no necessary correlation exists in fact between functional loss and industrial disability. Loss of a foot will mean one thing to a person with a desk job and quite another to a person who is trained only in work requiring standing, walking and lifting. But for the fortuity that his injury was to a scheduled member, Graves would have recovered for his actual industrial disability rather than the wholly arbitrary presumed industrial disability under the schedule.
>
> The schedule brings a windfall to the worker in some cases and gross hardship to the worker in others. Although it is argued the schedule has the advantage of simplicity, it is questionable whether that advantage is worth the cost. The result in the present case is indefensible except that it is demanded by an anachronistic statute.

*Graves*, 331 N.W.2d at 120.

"Anachronistic" is a perfect adjective to describe the scheduled injury provision because it was enacted more than eighty years ago. Just how obsolete, unfair, and medically wrong the schedules are has been described this way:

> The origins of the exact numbers of weeks assigned to losses of particular members are lost in the mists of early compensation history. More recently, the American

Medical Association undertook a complete reexamination of these arbitrary figures, attempting to bring to bear on them the most modern techniques of estimating the functional loss to the body as a whole represented by loss of a given member. The resulting figures show some significant deviations from traditional schedules in the relative gravity of losses of members.

1C Arthur Larson, *The Law of Workmen's Compensation* § 58.11, at 10–492.92 (1993) [hereinafter Larson].

I think the scheduled injury provision is out of step with recent developments in workers' compensation law. One noted workers' compensation commentator describes the trend:

> Although in many jurisdictions the schedule award is the exclusive remedy whenever applicable, some courts are beginning to treat the loss of specific members as amounting to percentage disabilities of larger members, or of the entire body, when this more fairly reflects the actual effect of the injury.

Larson, § 58.00, at 10–492.78. As our case authority concedes, scheduled permanent partial disabilities are *arbitrarily* compensable according to the classifications of sections 85.34(2)(a) to (t) without regard to the loss of earning capacity. And the only justification for this method is that it presumably makes certain the amount of compensation in the case of specific injury and it presumably avoids controversies. *Dailey v. Pooley Lumber Co.*, 233 Iowa 758, 760, 10 N.W.2d 569, 571 (1943).

In deciding workers' compensation cases, we mouth the principle that the workers' compensation law is to be liberally construed in the employee's favor. *See, e.g., Teel v. McCord*, 394 N.W.2d 405, 406 (Iowa 1986). To say that the scheduled injury provision is in tune with this principle is a cruel joke.

This court has been chipping away at the unfairness of this provision. *See, e.g., Mortimer v. Fruehauf Corp.*, 502 N.W.2d 12, 17 (Iowa 1993) (a psychological condition caused or aggravated by a scheduled injury is compensable as an unscheduled injury). The

legislature should complete the process we have begun by getting in step with the modern trend to make the scheduled injury provision more fair.