# IN THE COURT OF APPEALS OF IOWA

No. 14-0682
Filed February 11, 2015

**MENARD, INC., and ZURICH
AMERICAN INSURANCE,**
        Petitioners-Appellants,

**vs.**

**DELORIS SCHNEBERGER,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Lawrence McLellan,

Judge.


        An employer and its insurance carrier appeal the award of workers'

compensation benefits for a worker's mental health conditions, claiming the

conditions were not causally related to the physical injury she sustained on the

job.  **DISTRICT COURT JUDGMENT AFFIRMED; CASE REMANDED**.


        Sasha L. Monthei of Scheldrup Blades, Cedar Rapids, for appellants.

        Jacob J. Peters of Peters Law Firm, P.C., Council Bluffs, for appellee.


        Considered by Danilson, C.J., and Doyle and Tabor, JJ.

**TABOR, J.**

Employer Menards challenges a finding by the Iowa Workers' Compensation Commissioner that a workplace injury to Deloris Schneberger's shoulder in July 2008 caused her ongoing mental health difficulties. The employer criticizes the agency's reliance on one psychiatrist's view that the worker's depression and anxiety arose from her physical injury. The employer touts contrary expert opinions offered into the agency record. Because determining whether to accept or reject an expert's opinion on medical causation is within the "peculiar province" of the commissioner as fact finder, we affirm the agency's decision.

## I.     Background for Medical Causation Issue

As both parties indicate in their briefs, the issue on appeal is whether Schneberger suffered a compensable "physical-mental" injury. Our supreme court has consistently held workers exhibiting psychological conditions resulting from work-related physical trauma are entitled to workers' compensation. *See Mortimer v. Fruehauf Corp.*, 502 N.W.2d 12, 16 (Iowa 1993), citing *Coghlan v. Quinn Wire & Iron Works*, 164 N.W.2d 848, 853 (Iowa 1969) (recognizing back injury aggravated, accelerated, or precipitated a manic depressive psychotic condition) and *Gosek v. Garmer & Stiles Co.*, 158 N.W.2d 731, 737 (Iowa 1968) (recognizing back injury triggered neurosis); *see also* 4 Lex K. Larson, *Larson's Worker's Compensation Law*, § 56:03 Physical Trauma Causing Nervous Injury (2014) (explaining "when there has been a physical accident or trauma, and claimant's disability is increased or prolonged by traumatic neurosis, conversion

hysteria, or hysterical paralysis, it is now uniformly held that the full disability including the effects of the neurosis is compensable").

An employee has the burden to prove by a preponderance of the evidence that her injuries arose out of and in the course of employment. *See Quaker Oats Co. v. Ciha*, 552 N.W.2d 143, 150 (Iowa 1996). An injury is considered to arise out of employment "if there is a causal connection between the employment and the injury." *St. Luke's Hosp. v. Gray*, 604 N.W.2d 646, 652 (Iowa 2000). In this case, the employer questions whether Schneberger's mental health problems are causally related to the physical trauma she sustained on the job. To address the employer's claim, we first set out the history of the worker's injuries.

### A. Physical Trauma

In Schneberger's case, the employer stipulated to the physical trauma, which occurred on July 23, 2008.[1] That day Schneberger was unloading pallets at Menards's distribution center in Shelby, Iowa, when she "went to throw a box" and suddenly realized it was much heavier than she expected. She had an immediate onset of pain in her right shoulder: "[I]t felt like somebody had set it on fire." She sought treatment for her shoulder injury from Dr. Daniel Larose, an orthopedic surgeon. Through an MRI, Dr. Larose found Schneberger had a small inferior labral tear, a suspected superior labral tear, and an inferior tear of the supraspinatus. He recommended an injection and physical therapy. In February 2009, Schneberger had shoulder surgery to repair the labrum and

---

[1] Schneberger was forty-six years old at the time of the injury. She had been working at Menards since March 2008. She had a two-year college degree in business and fashion merchandising, but most of her employment through the years had involved physically demanding work.

rotator cuff. She continued to have pain in her shoulder after the surgery. On March 31, 2009, Dr. Larose suspected she was developing a reflex dystrophy and prescribed Neurontin (otherwise known as gabapentin) for her nerve pain.[2]

Schneberger remained on the Neurontin for the next few months. During that period, she recalls having panic attacks while performing light duties at Menards; she would start sweating and then go into "kind of a daze." When she called to see Dr. Larose on July 9, 2009, she reported feeling "very depressed" and "over-whelmed." Dr. Larose believed she needed to see a psychiatrist that same day and referred her to Dr. Craig Seamands. Dr. Larose also asked Schneberger to stop taking the Neurontin. A nurse practitioner at the emergency room prescribed Schneberger an anti-depressant and scheduled an appointment with Dr. Seamands.

**B. Mental Injury**

In his first evaluation of Schneberger on September 4, 2009, Dr. Seamands described her as having a "history of chronic pain difficulties and secondary psychological disturbance." He noted she was having "panic symptoms" while on a therapeutic trial of Neurontin. He also noted she had "not really had any pre-existing history of depressive disorder except for situational depression under acute stressors."[3] Dr. Seamands diagnosed Schneberger with "dysthymic disorder" and prescribed Ambien for her chronic insomnia. The psychiatrist noted Schneberger was not motivated to engage in individual

---

[2] Dr. Larose also referred Schneberger to a pain specialist, Dr. Peter Piperis, whom she saw thirteen times in 2009.

[3] Schneberger took antidepressants for a short time in 2004 and 2005, after the deaths of her husband and several other people close to her.

psychotherapy at that time, but would consider that idea and return for counseling if needed.

Dr. Seamands conveyed his impressions of the September 4, 2009 evaluation of Schneberger in a letter to Dr. Larose: "She reports that essentially she is feeling normal mood and no problems since discontinuing the gabapentin. It does appear she does not have any underlying psychiatric problem or disorder until she suffered an adverse reaction to the gabapentin which has passed." Schneberger agreed in her testimony that after she stopped taking the Neurontin her mental state improved: "I was more capable—I was depressed and I was panicky, but I could handle it."

But Schneberger's condition took a downward turn in the spring of 2010. Because of the injury to her right shoulder it was painful to use her right hand, so she had been compensating by using her left hand "a lot" to grab things and to steer the car. She started having numbness in her left hand. Dr. Larose diagnosed her with left carpal tunnel syndrome in May 2010 and performed carpal tunnel release surgery in July 2010. Three weeks after the surgery, Schneberger was driving to Menards to deliver some paperwork when she "started sweating and shaking and just felt like screaming." She called Dr. Seamands's office from the interstate, telling the nurse she was having "a full-blown panic attack."

On August 19, 2010, Schneberger started seeing therapist Erin Austin, an associate of Dr. Seamands. In progress notes, Austin characterized the goal of the sessions as resolving the "core source of anxiety." The notes also indicated

Schneberger commonly felt anxiety and panic, was angry with her employer, and "wonders if she will be able to go back to work." Schneberger was still undergoing therapy with Dr. Seamands's office twice a month at the time of the compensation hearing.

Meanwhile, Schneberger met with Dr. Donald Gammel for an independent medical examination (IME) on October 26, 2010. Dr. Gammel is the medical director of "Work Fit" which specializes in occupational health services. Dr. Gammel observed during the examination Schneberger "appeared shaky, nervous, and is tearful." In his opinion, Schneberger's diagnoses of depression and anxiety were "unrelated to the work injury of 23 July 2008." Dr. Gammel reported:

> Ms. Schneberger identified to Dr. Seamands that she had a history of situational depressions under acute stressors. In most cases a depression disorder is going to be a chronic, recurring illness rather than a focused response to some specific experience. Subsequently, it becomes extremely difficult to justify a claim of recent causation for a major depressive episode, if a history of a previous episode is acknowledged, as in this case, any new episode would be normal and expected manifestation of the preexisting disorder rather than an unexpected event that might require an explanation such as occupational or tort relevant causation. Scientific findings more easily support a conclusion that mood disorders are a cause of complaints of chronic pain rather than an argument that the complaints of chronic pain caused the mood disorder.

In a letter to Schneberger's attorney in January 2011, Dr. Seamands offered the following opinion:

> Deloris has suffered major depression substantially related to her work-related injury in July of 2008. She did not have a preexisting condition of either panic or depression of similar severity prior to the work injury. Further her difficulties with the injury and her inability to work have been a substantial

psychological distress that has contributed to ongoing problems with both depression and anxiety.

In my opinion her work related Injury was a substantial factor in causation of her current depression and anxiety to a reasonable degree of medical certainty.

Dr. Seamands reiterated his opinion in an August 22, 2011 letter to Schneberger's counsel:

[T]here is a reasonable degree of medical certainty that her work related injury in July 2008 at her employment substantially aggravated and led to her symptoms of both major depressive disorder and panic disorder with agoraphobia. It does appear that this aggravation has caused a permanent state of affairs which has led to these two severe psychological conditions. I foresee in the future that she will require ongoing treatment both with medication management and individual therapy to attempt to manage the severity of her symptoms.

In the August 22 letter, the psychiatrist recalled he initially assessed Schneberger in October 2009 with major depression, single episode, severe. He further wrote she had "the complication of worsening panic disorder with agoraphobia" since July 2010.

Finally, on December 16, 2011, in anticipation of the upcoming workers' compensation hearing, Dr. Seamands provided an updated assessment of Schneberger's condition: "She continues to have difficulty with generalized anxiety disorder and major depressive disorder." He opined her symptoms had not improved and she remained unable to work.

## II.    Agency Action and Judicial Review

Schneberger filed her claim for worker's compensation benefits in January 2011. Menards answered, admitting the work injury, but disputing the nature and extent of Schneberger's entitlement to benefits.

Schneberger saw John Brooke, PhD, for an independent psychological evaluation on April 13, 2011. Dr. Brooke concluded her "only consistent emotional issue is fear of pain, and specifically that she did not want to return to work after her carpal tunnel surgery healed in the summer of 2010 because she was afraid of possible physical discomfort." He opined: "The support for a diagnoses of depression (Dysthymia or Major Depression) is inconsistent and scant at best." He further wrote: "The support for an anxiety disorder is also sparse and unconvincing." He questioned the connection between her shoulder injury and a generalized anxiety disorder or panic attacks. He asserted "there was nothing traumatic about her circumstances of the injury" and, in his estimation, the "timing makes no sense." He concluded her complaints "had a strong flavor of anger and resentment, not anxiety."

A deputy commissioner held an evidentiary hearing on April 12, 2012, at the Pottawattamie County Courthouse. Schneberger testified in favor of her claim. The employer offered the live testimony of Dr. Terry Davis, a psychiatrist in private practice in Omaha.

Menards retained Dr. Davis to evaluate Schneberger on January 9, 2012, as part of another IME.[4] Dr. Davis offered his opinion to a reasonable degree of medical and psychiatric certainty that Schneberger had a pain disorder with both psychological factors and a general medical condition, chronic. Dr. Davis's report explained that a pain disorder diagnosis falls under the category of

---

[4] Clinical licensed psychologist Rosanna Jones-Thurman did a psychological evaluation as part of the same IME. The psychologist found Schneberger to be "exhibiting symptoms of anxiety, depression, and somatoform issues," but also noted Schneberger appeared to be exaggerating her "symptom picture."

somatoform disorders, "which includes conditions where there are physical symptoms suggesting a physical disorder, but which cannot be fully explained by a general medical condition and which appears to be linked to psychological factors or conflicts." He did not know the exact cause of the pain disorder, but opined it was "**not** caused or aggravated by a work accident or injury."[5]

Dr. Davis testified:

> I'm not saying this lady's malingering. I'm not saying she's faking this. But she has a psychological need to deal with the stress in her life and the anger she's got at her employer, and she does that through having this chronic pain, saying, this is what Menards did to me. I can't work anymore, I'm depressed, I'm anxious because of that.

Dr. Davis also was critical of the views expressed by Dr. Seamands. Specifically, Dr. Davis challenged the diagnosis of a dysthymic disorder without the patient showing at least two years of a chronic depressive state. Dr. Davis also said Dr. Seamands "contradicts himself" when he diagnosed Schneberger with a dysthymic disorder and then later identifies her condition as a major depressive disorder. Dr. Davis also disagreed with Dr. Seamands's diagnoses of general anxiety and panic disorder with agoraphobia, contending Schneberger did not satisfy the criteria for those conditions.

After considering the live evidence and the exhibits presented by the parties, the deputy issued his arbitration decision on June 22, 2012. The deputy was more persuaded by the opinions offered by Dr. Seamands than by those offered by Dr. Davis, stating:

---

[5] Dr. Davis testified he also was an attorney but no longer practiced law. He testified he could only speak to causation from a medical standpoint.

> It was apparent from [his] testimony that Dr. Davis had no idea (or pretended to not know of) the legal standard of causation. Dr. Davis also admitted that the claimant had a very real and very disabling pain disorder after the shoulder injury, but that it was not casually connected to the work injury because it was not the direct medical cause. Dr. Davis also opined that the claimant's short term use of antidepressant medications in 2005 after the death of a close friend which followed deaths in the claimant's family, including her husband, established a pre-existing mental illness so that nothing could be attributed to the work injury in 2008. Dr. Davis' opinions which were, and are based on the wrong standard, are entitled to little or no weight.

The deputy accepted the opinions of Dr. Seamands because they were "well-reasoned" and "based on actual treatment over a period of time" and the deputy found Dr. Seamands to have "greater credentials and experience." The deputy ultimately determined Schneberger had a one-hundred percent industrial disability.

On appeal to the commissioner, Menards argued the deputy failed "to acknowledge that Dr. Davis's opinions regarding claimant's mental health conditions are essentially the same as those of Dr. Brooke and Dr. Jones-Thurman, as well as Dr. Gammel's." In his appeal decision filed September 12, 2013, the commissioner admitted the arbitration decision failed "to account for the opinions of Dr. Gammel, Dr. Brooke, and Dr. Thurman-Jones as to the issue of causation of claimant's mental condition." The commissioner went on to agree with the deputy "inasmuch as the opinions of Dr. Seamands are most supported and persuasive." The commissioner believed applying the correct legal causation standard, "Dr. Davis's testimony at the hearing tends to border on acknowledgment of a work connection between the work injury and the diagnosed conditions."

As for the other experts, the commissioner found their opinions flawed and unpersuasive for a variety of reasons. The commissioner noted Dr. Gammel specializes in occupational medicine rather than mental health conditions. According to the commissioner, Dr. Gammel's suggestion Schneberger's depression ended when she was taken off the Neurontin "does not comport with the treatment records from Dr. Seamands." The commissioner rejected Dr. Brooke's findings because "they fail to account for claimant's ability to perform full-duty work prior to the injury." The commissioner believed "at most, Dr. Brooke's opinion suggests that a preexisting condition was substantially lighted-up or aggravated." Finally, the commissioner pointed out Dr. Thurman-Jones did not make any independent causation findings. The commissioner affirmed the arbitration decision.

Menards filed a petition for judicial review in Polk County district court, alleging "the commissioner erroneously concluded Claimant sustained an injury to her mental health as a result of her July 28, 2008 work injury, and that said injury caused permanent total disability." The district court found substantial evidence in the agency record to support the commissioner's decision that Schneberger's mental health problems were caused by the right shoulder injury in July 2008. But the district court also decided the commissioner and deputy commissioner did not set forth the facts they relied upon to conclude "Schneberger suffered a 100 percent loss of earning capacity and thus sustained a 100 percent total industrial disability." The court remanded the case to the agency for further proceedings consistent with its decision.

Menards filed a notice of appeal, challenging only the district court's finding regarding Schneberger's mental health problems.[6]

## III. Scope and Standards of Review

In judicial review proceedings, the district court acts in an appellate capacity, reviewing the commissioner's decision for the correction of legal error. *Mike Brooks, Inc. v. House*, 843 N.W.2d 885, 888 (Iowa 2014). On appeal, we apply the standards of Iowa Code chapter 17A (2013) to decide if we reach the same conclusion as the district court did. *Id.* at 889. When analyzing workers' compensation appeals, we recognize the law "should be, within reason, liberally construed" to benefit working men and women. *See Univ. of Iowa Hosps. & Clinics v. Waters*, 674 N.W.2d 92, 96 (Iowa 2004).

The deference we afford to decisions of administrative agencies largely controls our result today. *See Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 844 (Iowa 2011). Menards's challenge to medical causation (also called causation in fact) is a question vested in the expertise of the workers' compensation commission. *See Dunlavey v. Econ. Fire & Cas. Co.,* 526 N.W.2d 845, 853 (Iowa 1995). Medical causation is generally proven with expert testimony. *See Pease*, 807 N.W.2d at 845. It is the commissioner, as the trier of fact, who weighs the evidence and measures witness credibility. *Id.* The determination whether to accept or reject an expert opinion is within the "peculiar province" of the commissioner. *Id.*

---

[6] A final appealable judgment may provide for a remand to the agency for further proceedings. *See* Iowa Code §§ 17A.19(10), 17A.20; *Continental Telephone Co. v. Colton*, 348 N.W.2d 623, 625 (Iowa 1984).

We will upend the commissioner's finding of medical causation only if it is not supported by substantial evidence. *See* Iowa Code § 17A.19(10)(f). "Substantial evidence" is defined as "the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." *Id.*

## IV. Substantial Evidence Analysis

The commissioner encountered a classic "battle of the experts" regarding Schneberger's mental health claim. On the one hand was her treating psychiatrist, Dr. Seamands, who found her work-related shoulder injury was a substantial factor in causing her depression and anxiety. On the other hand were the experts conducting independent evaluations for Menards, including Dr. Davis, Dr. Jones-Thurman, Dr. Gammel, and Dr. Brooke. Their diagnoses varied, but none found Schneberger's mental health issues were related to her work injury. The commissioner gravitated to the opinion of Dr. Seamands, while discussing in detail why he distrusted the conclusions of the other experts. *See IBP, Inc. v. Al-Gharib*, 604 N.W.2d 621, 631 (Iowa 2000) (holding commissioner may accept or reject expert testimony, in whole or in part, and determines the weight to give to expert testimony).

Menards tries to frame the question as error on the part of the commissioner: "The explanation offered by the commissioner in rejecting the Defendant-offered expert opinions concluding Claimant did not suffer a

compensable physical/mental injury is contrary to the evidence in the record and therefore not supported by substantial evidence." The employer also faults the commissioner for not addressing inaccuracies in Dr. Seamands's report.

To grant the relief requested by Menards, we would have to step into the shoes of the commissioner, which we cannot do. "The courts, in their appellate capacity, 'are not at liberty to accept contradictory opinions of other experts in order to reject the finding of the commissioner.'" *Pease*, 807 N.W.2d at 850 (citation omitted). The commissioner did not blithely reject the views of the employer's experts nor did he blindly embrace Dr. Seamands's opinion. The commissioner critiqued each independent examination and pointed to the limitations and discrepancies. In addition, the agency's appeal decision outlined the consistency in Dr. Seamands's evaluation of Schneberger's psychological disturbances. The commissioner found it significant that Dr. Seamands has had a treating relationship with the claimant since September 2009 and "has seen the progression of her mental difficulties." In the commissioner's estimation: "Dr. Seamands provided a detailed opinion that claimant's mental health conditions are substantially related to the work injury and that her inability to work and her chronic pain has been a substantial psychological distress that has contributed to ongoing problems with both depression and anxiety."

We recognize small inconsistencies may be found in Dr. Seamands's reports. For example, he initially diagnosed Schneberger with "dysthymic disorder" in September 2009, but his August 22, 2011 letter to counsel recalled the initial diagnosis as major depression. While such an oversight or shift in

impressions may be considered by the commissioner in making a credibility determination, it is not the kind of self-contradiction or absurdity that would prompt the trier of fact to deem the opinion to be a nullity. *See Pease*, 807 N.W.2d at 848. We reject Menards's argument Dr. Seamands's opinions were so flawed they do not constitute substantial evidence to support the commissioner's ruling.

We also address the employer's claim Schneberger did not prove causation because there was a "huge gap in time" when she had "absolutely no mental health complaints." In September 2009, Dr. Seamands evaluated Schneberger and believed taking her off Neurontin addressed her symptoms of depression. Schneberger acknowledged the medication change improved her mental outlook. But eleven months later, in August 2010, Schneberger called Dr. Seamands's office in the throes of a panic attack while on her way to Menards. Both Schneberger and Dr. Seamands attributed her anxiety to her work accident and associated physical limitations and chronic pain stemming from her shoulder injury. The commissioner was entitled to accept that causation determination.

The record shows Schneberger had been receiving treatment throughout late 2009 and early 2010 for chronic pain. Dr. Piperis continued to administer injections for her right shoulder pain. Dr. Larose suggested the possibility of additional shoulder surgery during visits in early 2010. In July 2010, Dr. Larose performed carpel tunnel surgery on Schneberger's left wrist, which she had been overusing due to her right shoulder pain. About one month later, Schneberger reinitiated treatment with Dr. Seamands's office and described to the therapist

the panic attacks she had been experiencing when driving to work or thinking about going to work. On this record, we find substantial evidence to support the commissioner's determination Schneberger met her burden to show her mental health problems were causally related to the physical trauma she sustained on the job.

While Menards's experts drew different conclusions from their evaluations of Schneberger, those conclusions do not mean the evidence was insubstantial. *See John Deere Dubuque Works of Deere & Co. v. Weyant,* 442 N.W.2d 101, 105 (Iowa 1989). Our job on appeal is not to ask if the evidence supports a different finding; rather, we are limited to deciding if, viewing the record as a whole, substantial evidence supports the findings actually made by the commissioner. *See Pease,* 807 N.W.2d at 845. Because the record here supports the commissioner's causation finding, we affirm. We remand to the district court for remand to the agency to conduct further proceedings consistent with the district court's judicial review order.

**DISTRICT COURT JUDGMENT AFFIRMED; CASE REMANDED.**