# IN THE SUPREME COURT OF IOWA

No. 22–1328

Submitted February 20, 2024—Filed March 29, 2024

**BRIDGESTONE AMERICAS, INC.,** and **OLD REPUBLIC INSURANCE COMPANY,**

Appellants,

vs.

**CHARLES ANDERSON,**

Appellee.

---

Appeal from the Iowa District Court for Polk County, Celene Gogerty, District Judge.

An employer appeals a district court order affirming a decision of the workers' compensation commissioner. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**

May, J., delivered the opinion of the court, in which all justices joined.

Alison E. Stewart (argued), Timothy W. Wegman, and Jordan R. Gehlhaar (until withdrawal) of Peddicord Wharton, LLP, West Des Moines, for appellant.

Channing L. Dutton (argued) of Lawyer, Lawyer, Dutton, Drake & Conklin, LLP, Urbandale, for appellee.

Terri C. Davis and Teresa B. Morio. Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, for amicus curiae The Iowa Association of Business and Industry.

**MAY, Justice.**

After decades of hard manual labor, an employee reported a right shoulder injury and a right arm injury to his employer. Then the employee pursued a workers' compensation action. The deputy workers' compensation commissioner awarded compensation, and the workers' compensation commissioner affirmed the award. The employer sought judicial review. The district court affirmed the commissioner's decision. The employer then filed this appeal. On appeal, the employer poses three questions:

1.    Was the commissioner correct in finding that the injuries are compensable?

2.    Was the commissioner correct in finding that the injuries should be compensated as unscheduled injuries under Iowa Code section 85.34(2)(*v*) (2021)?

3.    Was the commissioner correct in calculating compensation?

We only reach the first two questions. We conclude:

1.    The injuries are compensable; but

2.    The injuries are scheduled injuries under Iowa Code section 85.34(2), paragraphs (*m*) and (*n*).

In light of these conclusions, we affirm in part, we reverse in part, and we remand for determination of compensation for the employee's scheduled injuries.

**I. Factual and Procedural Background.**

Charles Anderson was sixty-eight years old at the time of his workers' compensation hearing. He has spent most of his life working for Bridgestone. His first day of work was March 1, 1974. His last day of work was October 31, 2018.

All of Anderson's jobs at Bridgestone involved physical work. During his last thirty-five years at Bridgestone, Anderson worked as a tire builder. Tire

building is particularly difficult work. The deputy commissioner summarized the evidence this way:

> Bridgestone made tires which varied in size from passenger tires to tractor tires. However, in the 1980's they stopped making passenger tires and since that time, have made all heavy-duty tractor tires. Mr. Anderson testified that a tire builder had to be strong, have strong hands, and had to constantly fight through problems. In his job as a tire builder, he had to use both hands and both feet at the same time. While performing his job, he had to put both arms up approximately 7 feet and to tear ply both directions. Some plies tore easily; some tore really hard; it depended on the gauge or thickness of the ply. A tire builder had to hold his hands and arms out in front of them to tear the plies. If the ply was too thick, then the builder had to cut the material with a hot knife, which involved the same motion of the upper extremities, but while holding a knife. Mr. Anderson described work that involved intense use of his hands and upper extremities and considerable hand and finger strength. His work also involved the use of his hands and upper extremities away from his torso.

Anderson's decades of labor led to an injury to his right shoulder and an injury to his right arm. Anderson brought these injuries to Bridgestone's attention on October 31, 2018. That day, Anderson saw the company doctor, Dr. Troll. Dr. Troll noted "wear and tear degenerative changes" in Anderson's right shoulder. After a second visit, Dr. Troll suggested that Anderson should see his own physician.

Anderson then saw his primary care physician, Dr. Harrison. Dr. Harrison noted that although Anderson had suffered no acute injury, Anderson's symptoms could be the product of an overuse injury related to his occupation.

Dr. Harrison referred Anderson to Dr. Davick, an orthopedic specialist. Dr. Davick ordered an MRI of Anderson's right shoulder. The imaging revealed muscle tearing, including a near-full-thickness tear to the rotator cuff. Dr. Davick performed surgery on Anderson's right shoulder in February 2019. It

was Dr. Davick's opinion that Anderson's shoulder injury had been caused by his work as a tire builder.

Anderson continued to have numbness and tingling in his right hand. So Dr. Davick referred Anderson to Dr. Rodgers, who is also an orthopedic specialist. In October 2019, Rodgers performed a carpal tunnel release and ulnar nerve transposition on Anderson's right arm.

Anderson brought a workers' compensation action against Bridgestone. Anderson alleged injuries to his "right arm and shoulder." He stated that his injury date was "10/31/18."

Anderson's attorney sent him to Dr. Stoken. In a written report, Dr. Stoken tied Anderson's injuries to his employment.

An arbitration hearing was held in 2021. The deputy concluded that Anderson had suffered compensable permanent injuries to his right arm and right shoulder. The deputy also concluded that Anderson's injuries should be treated as unscheduled injuries under Iowa Code section 85.34(2)(*v*) and that Anderson's compensation should be calculated based on his loss of future earning capacity. Specifically, the deputy found that Anderson had sustained a fifty percent loss of future earning capacity. The deputy awarded compensation on that basis.

Bridgestone appealed to the commissioner. The commissioner affirmed the deputy's arbitration decision in its entirety.

Bridgestone then filed a petition for judicial review in the district court. The district court affirmed the commissioner's appeal decision.

Bridgestone then appealed to this court. We retained the appeal. Iowa R. App. P. 6.1101(2); Iowa Ct. R. 21.21.

**II. Analysis.**

**A. Issues on Appeal.** As mentioned, Bridgestone raises three issues on appeal. First, Bridgestone contends that there was insufficient evidence to support the commission's finding that Anderson's injuries were caused by his employment and, therefore, compensable. Second, Bridgestone contends that the commission erred in concluding that Anderson's injuries should be compensated as unscheduled injuries rather than scheduled injuries. Third, Bridgestone contends that the commission's award was excessive. We address the issues in turn although, as mentioned, we only reach the first two.

**B. Causal Relationship.** The first issue is whether the commissioner erred in determining that Anderson's injuries were compensable. As to this issue, we see no grounds to reverse the commissioner's determinations.

Under our workers' compensation statute, employers must pay compensation to employees for "personal injuries . . . arising out of and in the course of the employment." Iowa Code § 85.3(1). This causal inquiry presents questions of fact that are "vested in the discretion of the" commissioner. *Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 844–45 (Iowa 2011). We affirm the commissioner's factual findings if they are supported by substantial evidence. *Mid Am. Constr. LLC v. Sandlin*, 2 N.W.3d 838, 846 (Iowa 2024). Note that evidence may be substantial even if "different conclusions may be drawn from the evidence" and, indeed, even if "we may have drawn a different conclusion as fact finder." *Pease*, 807 N.W.2d at 845; *accord Sandlin*, 2 N.W.3d at 846. "Our task, therefore, is not to determine whether the evidence supports a different finding; rather, our task is to determine whether substantial evidence, viewing the record as a whole, supports the findings actually made." *Pease*, 807 N.W.2d at 845.

Following our review of the record as a whole, we conclude that substantial evidence supports the commissioner's findings here. Dr. Troll, Dr. Harrison, Dr. Stoken, and Dr. Davick all tied Anderson's shoulder injury to Anderson's employment. And Dr. Stoken's report can be interpreted as tying both injuries to Anderson's employment. These expert opinions provided substantial evidence to support the commissioner's finding that Anderson's injuries were caused by his employment.

Bridgestone points to inconsistencies in Anderson's comments to treaters and also in Anderson's testimony. But "credibility determinations in workers' compensation claims are within the domain of the commissioner as trier of fact." *Id.* at 847. Moreover, "[m]edical causation 'is essentially within the domain of expert testimony' " and "[u]ltimately, . . . the determination of whether to accept or reject an expert opinion is within the 'peculiar province' of the commissioner." *Id.* at 845 (first quoting *Dunlavey v. Econ. Fire & Cas. Co.,* 526 N.W.2d 845, 853 (Iowa 1995); and then quoting *Deaver v. Armstrong Rubber Co.,* 170 N.W.2d 455, 464 (Iowa 1969)). And here, at least, we see no grounds to second guess the commissioner's reliance on the expert opinions mentioned above.

Substantial evidence supports the commissioner's findings of causation and, therefore, compensability. The district court was correct to affirm those findings.

**C. Scheduled or Unscheduled.** We now address the central issue in this case: Was the commissioner correct in concluding that the injuries should be compensated as unscheduled injuries under Iowa Code section 85.34(2), paragraph (*v*)? Or should the commissioner have ruled that they are scheduled injuries under Iowa Code section 85.34(2), paragraphs (*m*) and (*n*)?

1. *Standard of review.* Before diving into the merits, though, we note that special standard-of-review issues arise when we consider an agency's

interpretation of a statute. If the legislature has clearly vested an agency with interpretive authority over a provision of law, we defer to the agency's interpretation. *Id.* § 17A.19(10)(*l*). In those cases, we will reverse only if the agency's interpretation is "irrational, illogical, or wholly unjustifiable." *Id.* But if the legislature has not clearly vested an agency with interpretive authority, then our review of the agency's interpretation is for errors at law. *Id.* § 17A.19(10)(*c*).

We have concluded that the legislature did not vest the workers' compensation commissioner with interpretive authority over chapter 85 generally. *P.M. Lattner Mfg. Co. v. Rife*, 2 N.W.3d 859, 865 (Iowa 2024). And this case does not involve the interpretation of terms uniquely within the subject matter expertise of the agency. *See Iowa Ins. Inst. v. Core Grp. of the Iowa Ass'n for Just.*, 867 N.W.2d 58, 65 (Iowa 2015). So we review the commissioner's interpretation of section 85.34 for correction of errors at law. *P.M. Lattner*, 2 N.W.3d at 865. We do not "defer[] to the agency's interpretation." *Id.* (quoting *Brewer-Strong v. HNI Corp.*, 913 N.W.2d 235, 243 (Iowa 2018)).

2. *Overview.* Now we turn to the statute itself. Section 85.34(2) governs compensation for permanent partial disabilities. Iowa Code § 85.34(2). The method and extent of compensation depends in large part on whether the employee's injury is considered "scheduled" or "unscheduled." *Chavez v. MS Tech. LLC*, 972 N.W.2d 662, 666 (Iowa 2022). The scheduled injuries are those described or referred to in paragraphs (*a*) through (*u*) of section 85.34(2). *Id.* The unscheduled injuries are governed by paragraph (*v*) of section 85.34(2). *Id.* An injury is unscheduled if it is an injury "*other than those* . . . described or referred to in paragraphs '*a*' through '*u*' " of section 85.34(2). Iowa Code § 85.34(2)(*v*) (emphasis added).

The distinction between scheduled and unscheduled injuries can make a difference in how the employee is compensated. *See Chavez*, 972 N.W.2d at

666–67. Scheduled injuries are generally compensated based on functional impairment, that is, the extent to which a body part's function has been impaired. *Id.* at 669. For example, paragraph (*a*) of section 85.34(2) addresses the first scheduled disability, "the loss of a thumb." Iowa Code § 85.34(2)(*a*). More specifically, paragraph (*a*) calls for "sixty weeks" of compensation "[f]or the loss of a thumb." *Id.* So, "[i]f an employee suffered a work injury resulting in a 10% functional impairment to the thumb, the employee would be entitled to six weeks' compensation (10% of sixty weeks)." *Loew v. Menard, Inc.*, 2 N.W.3d 880, 884 (Iowa 2024). The other paragraphs of the schedule require similar calculations for other scheduled injuries, such as "loss of a hand" (190 weeks), "loss of an eye" (140 weeks), and so on. Iowa Code § 85.34(2)(*a*)–(*u*).

Unscheduled injuries are sometimes compensated differently. *Id.* § 85.34(2)(*v*). Compensation for unscheduled injuries depends in part on whether the employee returns to work after the injury. *Id.* If the employee returns to work at the same or greater pay, then the functional impairment method still applies. *Id.*; *accord Chavez*, 972 N.W.2d at 666–67. But if the employee does not return to work at the same or greater pay, then a different method applies. Iowa Code § 85.34(2)(*v*). In those cases, compensation is based on the employee's loss of earning capacity. *Loew*, 2 N.W.3d at 884. The loss-of-earning-capacity calculation requires the commissioner to consider not only the employee's functional impairment but also the employee's "age, education, work experience, and adaptability to retraining, to the extent any of these factors affect the employee's prospects for relocation in the job market." *Id.* (quoting *Sherman v. Pella Corp.*, 576 N.W.2d 312, 321 (Iowa 1998)). A reduction in an employee's earning capacity is sometimes called "industrial disability." *Id.*

3. *Application.* With this background in mind, we now consider whether Anderson's shoulder injury and arm injury should have been treated as

scheduled or unscheduled injuries under Iowa Code section 85.34(2). This is, of course, essentially a question of statutory interpretation. And we note that both Anderson and Bridgestone have asked us to interpret the workers' compensation statute according to its plain language. These requests are consistent with our duty. "We are required to use the plain language of the statute when construing" the workers' compensation statute. *Warren Props. v. Stewart*, 864 N.W.2d 307, 315 (Iowa 2015); *accord, e.g.*, *Walker v. Mlakar*, 489 N.W.2d 401, 405 (Iowa 1992) (en banc) ("To require a coemployee to have actual knowledge of a hazard before exposing him or her to tort liability is more consistent with the plain language of section 85.20."). To be sure, our cases acknowledge legislative purposes as well, including the purpose of helping workers. *Sandlin*, 2 N.W.3d at 850. Even so, we do not have "leave to ignore the plain language of the statute." *Hoyt v. Wendling Quarries*, No. 14–0800, 2015 WL 576174, at *2 (Iowa Ct. App. Feb. 11, 2015).

Following our study of the plain language of section 85.34, we conclude that the commissioner erred by concluding that Anderson suffered an unscheduled injury. As mentioned, an injury can be unscheduled only if it fits in paragraph (*v*). Iowa Code § 85.34(2)(*v*). And by its plain terms, paragraph (*v*) can only apply to injuries "*other than those* . . . described or referred to in paragraphs '*a*' through '*u.*' " *Id.* (emphasis added). But Anderson's injuries are not "*other than those* . . . described or referred to in paragraphs '*a*' through '*u.*' " *Id.* (emphasis added). Anderson's injuries are to his shoulder and arm. Both are "described or referred to" in the schedule composed of "paragraphs '*a*' through '*u.*' " *Id.* § 85.34(2). Specifically, Anderson's shoulder injury is "described or referred to" in paragraph (*n*), which states: "*n.* For the loss of a shoulder, weekly compensation during [a percentage of] four hundred weeks." *Id.* § 85.34(2)(*n*). And Anderson's arm injury is "described or referred to" in paragraph (*m*), which states: "*m.* The loss of two-thirds of that part of an arm between the shoulder

joint and the elbow joint shall equal the loss of an arm and the compensation therefor shall be weekly compensation during [a percentage of] two hundred fifty weeks." *Id.* § 85.34(2)(*m*). Because Anderson's injuries are "described or referred to" in scheduled paragraphs (*m*) and (*n*), paragraph (*v*) does not apply. *Id.* § 85.34(2). The injuries are scheduled, not unscheduled.

4. *Counterarguments.* We have considered all of Anderson's counterarguments. Three of them deserve discussion here, namely: (1) Anderson's argument concerning the statute's use of the singular and plural, (2) Anderson's argument concerning paragraph (*t*), and (3) Anderson's argument that our interpretation affords no meaning to paragraph (*v*).

a. *Singular vs. plural.* We begin with Anderson's point about the singular and the plural. Anderson notes that paragraph (*n*) describes compensation for "a shoulder"—singular—and paragraph (*m*) describes compensation for "an arm"—also singular. *Id.* § 85.34(2)(*m*), (*n*). From this, Anderson infers that the schedule cannot apply to him because his injuries include both "a shoulder" and "an arm."

We disagree. To begin with, when we interpret statutes, we usually don't put too much weight on the use of "a" or "an" or to other uses of the singular or plural. *Id.* § 4.1(17) ("Unless otherwise specifically provided by law the singular includes the plural, and the plural includes the singular."); *see Little v. Davis*, 974 N.W.2d 70, 75–76 (Iowa 2022) (applying Iowa Code section 4.1(17)); *Porter v. Harden*, 891 N.W.2d 420, 426 (Iowa 2017) (observing that Iowa Code section 4.1(17) "should caution us against reading too much into the presence of the words 'a' or 'an' in a statute depending on the context"); *Sexton v. Lauman*, 57 N.W.2d 200, 202 (Iowa 1953) (construing a singular term in a statute to extend to the plural).

Moreover, the singular/plural distinction is not especially relevant here. This is not a case of plural shoulder injuries or plural arm injuries. Rather,

Anderson suffered injuries to "a shoulder" and "an arm." Iowa Code § 85.34(2)(*m*), (*n*). So it makes sense to compensate Anderson under the scheduled provisions for "a shoulder" and "an arm." *Id.*

This view is supported by the narrow scope of paragraph (*v*), the provision for unscheduled injuries. Paragraph (*v*) *does not say* that it applies unless a patient's injuries fit into *only one* of the paragraphs identified as (*a*), (*b*), (*c*), etc. *Id.* § 85.34(2)(*v*). Rather, according to its plain text, paragraph (*v*) *only* applies to injuries "other than those . . . described or referred to in paragraphs '*a*' through '*u*.'" *Id.* And, as explained, Anderson's injuries are "described *or referred to* in paragraphs '*a*' through '*u*.'" *Id.* (emphasis added). They are "described or referred to" in paragraphs (*n*) and (*m*), both of which are part of the schedule composed of "paragraphs '*a*' through '*u*.'" *Id.* § 85.34(2). So paragraph (*v*) does not apply.

b. *Paragraph (t).* We turn now to Anderson's arguments concerning paragraph (*t*). Paragraph (*t*) states in relevant part:

> *t.* The loss of both arms, or both hands, or both feet, or both legs, or both eyes, or any two thereof, caused by a single accident, shall equal five hundred weeks and shall be compensated as such . . . .

*Id.* § 85.34(2)(*t*).

Anderson notes that paragraph (*t*) describes certain losses of multiple body parts: "both arms," "both hands," and so on. *Id.* Anderson further notes that "shoulder" is not mentioned in paragraph (*t*). *Id.* From this, Anderson infers that the legislature excluded two-body-part losses from the schedule *if* one of those body parts is a shoulder.

We disagree. To begin with, it is worth noting that paragraph (*t*) isn't relevant to Anderson. By its plain terms, paragraph (*t*) applies to some situations in which multiple injuries are "caused by a single accident." *Id.* That isn't what

happened to Anderson. His injuries are the result of decades of work-related wear and tear.[1]

That aside, we think Anderson reads too much into paragraph (*t*). The most natural reading of paragraph (*t*) is that it provides special compensation—500 weeks—for workers who suffer certain specified combinations of injuries in a single accident. *Id.* But nothing in paragraph (*t*) precludes workers who suffer *other* combinations of injuries from being compensated under other scheduled paragraphs. *See id.* For example, paragraph (*e*) makes the loss of the fourth finger—the "little finger"—a scheduled injury that requires twenty weeks of compensation. *Id.* § 85.34(2)(*e*). If an employee lost both little fingers—in a single accident or otherwise—the employee would be compensated for each little finger under paragraph (*e*). *Id.* In other words, there would be two scheduled injuries. There would not be an unscheduled injury. Because little fingers are "described or referred to" in the schedule composed of "paragraphs '*a*' through '*u*,' " the worker who lost both little fingers would not fall into paragraph (*v*). *Id.* § 85.34(2).

Likewise, because Anderson's shoulder and arm injuries are "described or referred to" in the schedule composed of "paragraphs '*a*' through '*u*,' " Anderson's injuries cannot fall into paragraph (*v*). *Id.* A different interpretation would ignore the words of paragraph (*v*), which narrowly limit its scope to injuries that aren't "described" or even "referred to" on the schedule. *Id.* § 85.34(2)(*v*). We cannot ignore those narrow limits. As Anderson reminds us in his brief:

---

[1]Although Anderson's brief sometimes suggests that a single accident caused both injuries, the record does not support that view. Indeed, in other parts of his brief, Anderson admits the gradual nature of both injuries. For instance, on page twenty-five, Anderson emphasizes "the causal connection between thirty-five years of tire building and [his] injuries." On page twenty-one, footnote four, Anderson notes that his 2018 right carpal tunnel injury was the result of gradual, work-related wear and tear. Similarly, on page twenty-seven, footnote seven, Anderson notes that "[f]rom the record it is apparent there was not a single trauma which produced the shoulder complaint."

> The role of this court is to apply the words "of a statute as written." "[W]e may not—under the guise of statutory construction—enlarge or otherwise change the terms of a statute as the legislature adopted it." For us to interpret the statute to achieve some policy objective found nowhere in the statute's language . . . invades a sphere reserved for the legislature.

(Alteration and omission in original) (citation omitted) (first quoting *In re Marshall*, 805 N.W.2d 145, 160 (Iowa 2011); and then quoting *State v. Miller*, 590 N.W.2d 45, 47 (Iowa 1999)).

c. *But does paragraph (v) retain any effect?* Finally, we have considered Anderson's concern that our interpretation would leave paragraph (*v*) without meaning. And, of course, it is true that we must give meaning to "every word" in a statute. *E.g.*, *Maguire v. Fulton*, 179 N.W.2d 508, 510 (Iowa 1970). "None should be ignored. None should needlessly be given an interpretation that causes it to . . . have no consequence." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 174 (2012).

We think our interpretation honors these requirements. Our interpretation does not strip paragraph (*v*) of meaning. Rather, we have clarified its meaning by highlighting its outer boundaries. As explained, paragraph (*v*) does not apply to injuries "described or referred to" in the schedule composed of "paragraphs '*a*' through '*u*.'" Iowa Code § 85.34(2). And so, paragraph (*v*) generally doesn't apply to injuries to fingers, arms, hands, shoulders, or other parts "described or referred to" in the schedule. *Id.* Conversely, though, paragraph (*v*) certainly *does* apply to injuries that *aren't* "described or referred to" in the schedule. *Id.* For instance, because back injuries aren't "described or referred to" in the schedule, back injuries are compensated under paragraph (*v*). *Id.* The same applies to neck injuries, rib injuries, brain injuries, and so on. *Id.* Because they aren't "described or referred to" in the schedule, they are compensated under paragraph (*v*). *Id.* Moreover, under our case law, "when there is injury to some scheduled member

and also to parts of the body not included in the schedule, the resulting disability is compensated on the basis of an unscheduled injury." *Mortimer v. Fruehauf Corp.*, 502 N.W.2d 12, 16 (Iowa 1993). This is true regardless of "whether the spill over effects for the scheduled injury are physical or mental." *Id.* at 17. Either way, the unscheduled injury requires compensation under paragraph (*v*). So paragraph (*v*) continues to do important work.

### III. Disposition.

The district court was correct to affirm the commissioner's finding that Anderson's right shoulder injury and right arm injury are compensable. We affirm that ruling of the district court.

The district court erred in affirming the commissioner's finding that Anderson's right shoulder and right arm injuries should be compensated as unscheduled injuries. We reverse that ruling of the district court.

Because we conclude that the commissioner erred in treating Anderson's injuries as unscheduled, we also conclude that the commissioner erred in awarding compensation based on Anderson's loss of earning capacity. Likewise, the district court erred in affirming the award of compensation. We reverse that ruling of the district court. We remand to the district court for entry of an order remanding to the commissioner for further proceedings to determine compensation for Anderson's scheduled injuries.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**